Richard S. Busch (SBN 319881)
*E-Mail: rbusch@kingballow.com*
Keith Kelly (SBN 323469)
*E-Mail: kkelly@kingballow.com*
**KING & BALLOW**
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLIVIER BASSIL, an individual, BENJAMIN LASNIER, an individual, and LUKAS BENJAMIN LETH, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> JACQUES WEBSTER p/k/a Travis Scott, an individual; OZAN YILDIRIM p/k/a OZ, an individual; NIK DEJAN FRASCONA p/k/a Nik D, an individual; MICHAEL GEORGE DEAN p/k/a Mike Dean, an individual; JAMIE LEPR p/k/a Cash Passion, an individual; SEAN SOLYMAR, an individual; CACTUS JACK RECORDS, LLC, a Texas limited liability company; GRAND HUSTLE, LLC, a Georgia limited liability company; SONY MUSIC ENTERTAINMENT, INC., a Delaware corporation; SONY/ATV MUSIC PUBLISHING, LLC, a Delaware corporation; PAPA GEORGE MUSIC, a California company; THESE ARE SONGS OF PULSE, a California company; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: _____ <br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

**JURISDICTION**

1.      This Court has subject matter jurisdiction under 28 U.S.C § 1331 as the action arises under the original and exclusive jurisdiction of the federal court and 28 U.S.C § 1338(a) as the controversy arises under the Copyright Act of 1976 (17 U.S.C §§ 101 *et seq*.).

2.      This Court has personal jurisdiction over Defendants as discussed fully herein.

3.      This Court has general personal jurisdiction over JACQUES WEBSTER p/k/a Travis Scott (hereinafter, "Webster") because, upon information and belief, he is a resident of the State of California and this Judicial District, owns property in this Judicial District, and has other substantial contacts with the State of California and with this Judicial District specifically.

4.      This Court has specific personal jurisdiction over Webster because this suit arises out of and/or relates to his contacts with the State of California and this Judicial District. Specifically, upon information and belief, Webster co-wrote the Infringing Work (as defined herein) in the State of California. Upon information and belief, the sound recording of the Infringing Work was also recorded in whole or in part in California and in this Judicial District specifically. Webster is credited as an author of the United States Copyright Registration for the infringing musical composition "Highest in the Room" bearing registration number PA0002222799.  Additionally, upon information and belief, Webster has performed the Infringing Work at California locations including but not limited to performing "Highest in the Room" live on December 19, 2019, and December 20, 2019, at The Forum in Inglewood, California.

5.      Additionally, this Court has specific personal jurisdiction over Webster because, upon information and belief, Webster has licensed and/or authorized the licensing, distribution, and sale of the Infringing Work to residents of California and to California companies including within this Judicial District;

has directly advertised or authorized others to advertise the Infringing Work through California companies and to California residents; and has generated substantial revenues from performing the Infringing Work in the State of California and this Judicial District.

6.     This Court has specific personal jurisdiction over OZAN YILDIRIM p/k/a OZ (hereinafter "Yildirim") because this suit arises out of or relates to Yildirim's contacts with the State of California and this Judicial District. Upon information and belief, Yildirim and Defendants Webster and NIK DEJAN FRASCONA p/k/a Nik D (hereinafter "Frascona") wrote and produced the Infringing Work in the State of California and within this Judicial District. Upon information and belief, Yildirim and Defendants Webster, Frascona, MICHAEL GEORGE DEAN p/k/a Mike Dean (hereinafter "Dean"), SEAN SOLYMAR ("Solymar"), and JAMIE LEPR p/k/a Cash Passion ("Lepr") recorded the sound recording of the Infringing Work in whole or in part in California and in this Judicial District specifically. Yildirim is credited as an author of the United States Copyright Registration for the infringing musical composition "Highest in the Room" bearing registration number PA0002222799. Defendants Webster, Yildirim, Frascona, Dean, Solymar, and Lepr are in fact practical partners with respect to their work on the Infringing Work.

7.     This Court has specific personal jurisdiction over NIK DEJAN FRASCONA p/k/a Nik D (hereinafter "Frascona") because this suit arises out of or relates to Frascona's contacts with the State of California and this Judicial District. Frascona is a copyright claimant of the United States Copyright Registration for the infringing musical composition "Highest in the Room" bearing registration number PA0002222799. Upon information and belief, Frascona and Webster wrote and produced the Infringing Work in the State of California and within this Judicial District. Upon information and belief, Frascona and Defendants Webster, Yildirim, Dean, Solymar, and Lepr recorded

the sound recording of the Infringing Work in whole or in part in California and in this Judicial District specifically. Defendants Webster, Yildirim, Frascona, Dean, Solymar, and Lepr are in fact practical partners with respect to their work on the Infringing Work.

8.    This Court has general personal jurisdiction over MICHAEL GEORGE DEAN p/k/a Mike Dean (hereinafter "Dean") because, upon information and belief, Dean is a resident of the State of California and this Judicial District, owns property in this Judicial District, and has other substantial contacts with the State of California and with this Judicial District specifically.

9.    This Court has specific personal jurisdiction over Dean because this suit arises out of or relates to Dean's contacts with the State of California and this Judicial District. Upon information and belief, Dean and Defendants Webster, Yildirim, Frascona, Solymar, and Lepr recorded the sound recording of the Infringing Work in whole or in part in California and in this Judicial District specifically. Dean is credited as an author of the United States Copyright Registration for the infringing musical composition "Highest in the Room" bearing registration number PA0002222799. Defendants Webster, Yildirim, Frascona, Dean, Solymar, and Lepr are in fact practical partners with respect to their work on the Infringing Work.

10.    This Court has general personal jurisdiction over JAMIE LEPR p/k/a Cash Passion (hereinafter "Lepr") because, upon information and belief, he is a resident of the State of California and this Judicial District, owns property in this Judicial District, and has other substantial contacts with the State of California and with this Judicial District specifically.

11.    This Court has specific personal jurisdiction over Lepr because this suit arises out of or relates to Lepr's contacts with the State of California and this Judicial District. Upon information and belief, Lepr and Defendants Webster, Yildirim, Frascona, Solymar, and Dean recorded the sound recording of the

Infringing Work in whole or in part in California and in this Judicial District specifically. Defendants Webster, Yildirim, Frascona, Dean, Solymar, and Lepr are in fact practical partners with respect to their work on the Infringing Work.

12.     This Court has general personal jurisdiction over SEAN SOLYMAR ("Solymar") because, upon information and belief, he is a resident of the State of California and this Judicial District, owns property in this Judicial District, and has other substantial contacts with the State of California and with this Judicial District specifically.

13.     This Court has specific personal jurisdiction over Solymar because this suit arises out of or relates to Solymar's contacts with the State of California and this Judicial District. Upon information and belief, Solymar and Defendants Webster, Yildirim, Frascona, Lepr, and Dean recorded the sound recording of the Infringing Work in whole or in part in California and in this Judicial District specifically. Defendants Webster, Yildirim, Frascona, Dean, Solymar, and Lepr are in fact practical partners with respect to their work on the Infringing Work.

14.     This Court has general personal jurisdiction over CACTUS JACK RECORDS, LLC (hereinafter "Cactus Jack") because it has continuous and systematic contacts with the State of California to render it essentially at home in California.  Specifically, upon information and belief, (1) Cactus Jack is qualified to do business in California and is registered as a foreign corporation with the California Secretary of State as Cactus Jack Autos, LLC; (2) Cactus Jack Autos, LLC's principal place of business is in California, including an office located at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California, 90069, where it employs California residents; and (3) upon information and belief, Defendant Webster, a resident of California, is the manager of Cactus Jack Autos, LLC, and is, in fact, the alter ego of Cactus Jack and Cactus Jack Autos, LLC.

15.     This Court has specific personal jurisdiction over Cactus Jack because its suit-related conduct creates a substantial connection with the State of

California. Upon information and belief, the Infringing Work was released commercially through Cactus Jack, among others, and Cactus Jack has generated substantial revenue from exploitation of the Infringing Work and Infringing Sound Recording in California, which upon information and belief flows through Cactus Jack to Defendant Webster. Upon information and belief, Cactus Jack and Webster are alter egos of each other. Further and, as discussed more fully below, Webster co-wrote and recorded the Infringing Work in California.

16.    Additionally, this Court has specific jurisdiction over Cactus Jack because, on information and belief: (1) Cactus Jack knowingly and intentionally licensed and distributed, or authorized the licensing and distribution of, the Infringing Work in California and to California companies; (2) Cactus Jack maintains a contractual relationship with Webster, a California citizen under which Cactus Jack receives income and its interest in the Infringing Work, which was created in California; (3) Cactus Jack's conduct causes injury to, and is directed at, Plaintiffs and their intellectual property within the United States and the State of California; (4) Cactus Jack has benefitted substantially from the sale and exploitation of the Infringing Work to California residents; (5) Cactus Jack is, at a minimum, constructively aware of its continuous and substantial commercial interactions with California residents; (6) Cactus Jack actively participated in and/or authorized the unlawful manufacture of the Infringing Work in California and to California companies, including by signing a mechanical license with the California-based record label authorizing the inclusion of the Infringing Work in the Infringing Sound Recording, which was recorded in California; and (7) Cactus Jack advertised the Infringing Work to California residents and through California companies.

17.    This Court has specific personal jurisdiction over GRAND HUSTLE, LLC (hereinafter "Grand Hustle") because its suit-related conduct creates a substantial connection with the State of California. Upon information

and belief, the Infringing Work was released commercially through Grand Hustle, among others, and Grand Hustle has generated substantial revenue from exploitation of the Infringing Work and Infringing Sound Recording in California.

18. Additionally, this Court has specific jurisdiction over Grand Hustle because, upon information and belief: (1) Grand Hustle knowingly and intentionally licensed and distributed, or authorized the licensing and distribution of, the Infringing Work in California and to California companies; (2) Grand Hustle maintains a contractual relationship with Webster, a California citizen under which Grand Hustle receives income and its interest in the Infringing Work, which was created in California; (3) Grand Hustle's conduct causes injury to, and is directed at, Plaintiffs and their intellectual property within the United States and the State of California; (4) Grand Hustle has benefitted substantially from the sale and exploitation of the Infringing Work to California residents; (5) Grand Hustle is, at a minimum, constructively aware of its continuous and substantial commercial interactions with California residents; (6) Grand Hustle actively participated in and/or authorized the unlawful manufacture of the Infringing Work in California and to California companies, including by signing a mechanical license with the California-based record label authorizing the inclusion of the Infringing Work in the Infringing Sound Recording, which was recorded in California; and (7) Grand Hustle advertised the Infringing Work to California residents and through California companies.

19. This Court has general personal jurisdiction over SONY MUSIC ENTERTAINMENT, INC. (hereinafter, "Sony") because, upon information and belief, it has continuous and systematic contacts with the State of California to render it essentially at home in California. Specifically, upon information and belief, (1) Sony is qualified to do business in the State of California; and (2) Sony maintains an office located at 10202 Washington Boulevard, Culver City, California, 90232, where it employs California residents.

20.    This Court has specific personal jurisdiction over Sony because its suit-related conduct creates a substantial connection with the State of California. Sony is a copyright claimant of the United States Copyright Registration for the infringing Sound Recording bearing registration number SR0000858760. Upon information and belief, the Infringing Work was released commercially through Sony, among others, and Sony has generated substantial revenue from exploitation of the Infringing Work and Infringing Sound Recording in California.

21.    Additionally, this Court has specific jurisdiction over Sony because, upon information and belief: (1) Sony knowingly and intentionally licensed and distributed, or authorized the licensing and distribution of, the Infringing Work in California and to California companies; (2) Sony maintains a contractual relationship with Webster, a California citizen under which Sony receives income and its interest in the Infringing Work, which was created in California; (3) Sony's conduct causes injury to, and is directed at, Plaintiffs and their intellectual property within the United States and the State of California; (4) Sony has benefitted substantially from the sale and exploitation of the Infringing Work to California residents; (5) Sony is, at a minimum, constructively aware of its continuous and substantial commercial interactions with California residents; (6) Sony actively participated in and/or authorized the unlawful manufacture of the Infringing Work in California and to California companies, including by signing a mechanical license with the California-based record label authorizing the inclusion of the Infringing Work in the Infringing Sound Recording, which was recorded in California; and (7) Sony advertised the Infringing Work to California residents and through California companies.

22.    This Court has general personal jurisdiction over SONY/ATV MUSIC PUBLISHING, LLC (hereinafter, "Sony/ATV") because, upon information and belief, it has continuous and systematic contacts with the State of California to render it essentially at home in California. Specifically, upon

8

1    information and belief, (1) Sony/ATV is qualified to do business in the State of

2    California; and (2) Sony/ATV maintains an office located at 10202 Washington

3    Boulevard, Culver City, California, 90232, where it employs California residents.

4        23.    This Court has specific personal jurisdiction over Sony/ATV

5    because its suit-related conduct creates a substantial connection with the State of

6    California. Sony/ATV is a copyright claimant of the United States Copyright

7    Registration for the infringing musical composition "Highest in the Room"

8    bearing registration number PA0002222799. Upon information and belief, the

9    Infringing Work is published by Sony/ATV, among others, and Sony/ATV has

10   generated substantial revenue from exploitation of the Infringing Work and

11   Infringing Sound Recording in California, which upon information and belief

12   flows through Sony/TV to Webster.

13       24.    Additionally, this Court has specific jurisdiction over Sony/ATV

14   because, upon information and belief: (1) Sony/ATV knowingly and

15   intentionally licensed and distributed, or authorized the licensing and distribution

16   of, the Infringing Work in California and to California companies; (2) Sony/ATV

17   maintains a contractual relationship with Webster, a California citizen under

18   which Sony/ATV receives income and its interest in the Infringing Work, which

19   was created in California; (3) Sony/ATV's conduct causes injury to, and is

20   directed at, Plaintiffs and their intellectual property within the United States and

21   the State of California; (4) Sony/ATV has benefitted substantially from the sale

22   and exploitation of the Infringing Work to California residents; (5) Sony/ATV is,

23   at a minimum, constructively aware of its continuous and substantial commercial

24   interactions with California residents; (6) Sony/ATV actively participated in

25   and/or authorized the unlawful manufacture of the Infringing Work in California

26   and to California companies, including by signing a mechanical license with the

27   California-based record label authorizing the inclusion of the Infringing Work in

28   the Infringing Sound Recording, which was recorded in California; and (7)

Sony/ATV advertised the Infringing Work to California residents and through California companies.

25.    This Court has general personal jurisdiction over PAPA GEORGE MUSIC (hereinafter, "Papa George") because, upon information and belief, it has continuous and systematic contacts with the State of California to render it essentially at home in California. Specifically, upon information and belief, Papa George is administered by Warner-Tamerlane Publishing Corp., which maintains an office in the State of California and this Judicial District, located at 777 S. Santa Fe Avenue, Los Angeles, California, 90021, where it employs California residents.

26.    This Court has specific personal jurisdiction over Papa George because its suit-related conduct creates a substantial connection with the State of California. Papa George is a copyright claimant of the United States Copyright Registration for the infringing musical composition "Highest in the Room" bearing registration number PA0002222799. Upon information and belief, the Infringing Work is published by Papa George, among others, and Papa George has generated substantial revenue from exploitation of the Infringing Work and Infringing Sound Recording in California, which upon information and belief flows through Papa George to Defendant Dean.

27.    Additionally, this Court has specific jurisdiction over Papa George because, upon information and belief: (1) Papa George knowingly and intentionally licensed and distributed, or authorized the licensing and distribution of, the Infringing Work in California and to California companies; (2) maintains a contractual relationship with Dean, a California citizen under which Papa George receives income and its interest in the Infringing Work, which was created in California; (3) Papa George's conduct causes injury to, and is directed at, Plaintiffs and their intellectual property within the United States and the State of California; (4) Papa George has benefitted substantially from the sale and

exploitation of the Infringing Work to California residents; (5) Papa George is, at a minimum, constructively aware of its continuous and substantial commercial interactions with California residents; (6) Papa George actively participated in and/or authorized the unlawful manufacture of the Infringing Work in California and to California companies, including by signing a mechanical license with the California-based record label authorizing the inclusion of the Infringing Work in the Infringing Sound Recording, which was recorded in California; and (7) Papa George advertised the Infringing Work to California residents and through California companies.

28.     This Court has general personal jurisdiction over THESE ARE SONGS OF PULSE (hereinafter, "Pulse") because, upon information and belief, it has continuous and systematic contacts with the State of California to render it essentially at home in California. Specifically, upon information and belief, (1) Pulse is qualified to do business in the State of California; and (2) Pulse maintains an office in this Judicial District located at 2840 Rowena Avenue, Los Angeles, California, 90039, where it employs California residents.

29.     This Court has specific personal jurisdiction over Pulse because its suit-related conduct creates a substantial connection with the State of California. Pulse is a copyright claimant of the United States Copyright Registration for the infringing musical composition "Highest in the Room" bearing registration number PA0002222799. Upon information and belief, the Infringing Work is published by Pulse, among others, and Pulse has generated substantial revenue from exploitation of the Infringing Work and Infringing Sound Recording in California, which upon information and belief flows through Pulse to Defendant Yildirim.

30.     Additionally, this Court has specific jurisdiction over Pulse because, upon information and belief: (1) Pulse knowingly and intentionally licensed and distributed, or authorized the licensing and distribution of, the Infringing Work

in California and to California companies; (2) Pulse maintains a contractual relationship with Yildirim, a California resident under which Pulse receives income and its interest in the Infringing Work, which was created in California; (3) Pulse's conduct causes injury to, and is directed at, Plaintiffs and their intellectual property within the United States and the State of California; (4) Pulse has benefitted substantially from the sale and exploitation of the Infringing Work to California residents; (5) Pulse is, at a minimum, constructively aware of its continuous and substantial commercial interactions with California residents; (6) Pulse actively participated in and/or authorized the unlawful manufacture of the Infringing Work in California and to California companies, including by signing a mechanical license with the California-based record label authorizing the inclusion of the Infringing Work in the Infringing Sound Recording, which was recorded in California; and (7) Pulse advertised the Infringing Work to California residents and through California companies.

## **VENUE**

31.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claim occurred in this Judicial District. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1400 as at least one of the Defendants reside or may be found in this Judicial District and is subject to personal jurisdiction.

32.    This case is properly filed in the Central District, as a substantial part of events giving rise to this case occurred in the Central District of California.

## **INTRODUCTION**

33.    Plaintiffs OLIVIER BASSIL ("Bassil"), BENJAMIN LASNIER ("Lasnier"), and LUKAS BENJAMIN LETH ("Leth") (collectively "Plaintiffs") hereby complain and allege against Defendants: Webster, Yildirim, Frascona, Dean, Lepr, Solymar, Cactus Jack, Grand Hustle, Sony, Sony/ATV, Papa George, Pulse, and DOES 1 through 50 (collectively, "Defendants") as follows:

34.     This is an action for willful copyright infringement in which Defendant Webster boasts in "Highest in the Room" that others "fill my mind up with ideas" and that "we [are] gon[na] stay on top and break the rules." Here, Defendants did just with complete disregard for Plaintiffs' rights. Defendants "filled their minds up" with Plaintiffs' work by pretending to be interested in a collaboration while instead just taking Plaintiffs' work for themselves, and intentionally "broke the rules" by exploiting Plaintiffs' work on a massive scale without consent or a license, masquerading as if Plaintiffs' music is their own in an effort to "stay on top." Indeed, as discussed herein, months before Defendants released and performed "Highest in the Room": (1) Plaintiffs and Defendants engaged in many written communications via Instagram and e-mail about Defendants' collaborating with Plaintiffs in order to potentially use Plaintiffs' works as part of such collaboration; (2) at least one Defendant followed Plaintiff Lasnier's Instagram account; and (3) on three separate occasions, Plaintiff Lasnier publicly posted Plaintiffs' song "Cartier" to nearly a million followers on Instagram. Additionally, there is no doubt that Defendants' "Highest in the Room" was modeled after and copied original, prominent, and qualitatively and quantitatively important parts of Plaintiffs' "Cartier."

35.     On or about January 15, 2019, Plaintiff Bassil wrote and recorded the original compositional elements (described in detail below) on Skype alongside Plaintiffs Lasnier and Leth. On or about January 25, 2019, Plaintiff Lasnier sent Plaintiff Bassil a sound recording containing those original compositional elements, entitled "Cartier" (the "Original Work"). A United States Copyright for the composition and sound recording of the Original Work was duly registered with the United States Copyright Office on December 17, 2019, bearing Registration Number SR 001-396-708.

36.     The Defendants are the credited writers, copyright claimants, performers, publishers, producers, owners of the Infringing Work and Infringing

Sound Recording, and/or administrators of "Highest in the Room" which, as set forth more fully herein, deliberately copied and infringed original elements from the Original Work. Defendants copied the Original Work without license or consent, and have exploited the subsequent Infringing Work to their collective benefit without regard to Plaintiffs' rights and to Plaintiffs' detriment. The Infringing Work and Infringing Sound Recording directly misappropriate quantitatively and qualitatively important portions of Plaintiffs' Original Work in a manner that is easily recognizable to the ordinary observer. The Infringing Work and Infringing Sound Recording are substantially similar to the Original Work as discussed fully below, and satisfies both the extrinsic and intrinsic test for copyright infringement. All Defendants herein are practical partners of each other as that term is understood under California law. All Defendants herein are jointly and severally liable for willful copyright infringement, as all have benefitted from the copying of the Original Work as described herein, and all have violated one or more of Plaintiffs' exclusive rights under Section 106 of the United States Copyright Act.

## **PARTIES**

37.     Plaintiff Bassil, an individual, is a citizen of France, and permanent resident of the United States, residing in the State of California and this Judicial District. Bassil created the original compositional elements, along with Plaintiffs Lasnier and Leth, that is the basis of this lawsuit and is embodied in the Infringing Work and Infringing Sound Recording in a manner that constitutes willful copyright infringement. Bassil is a musician and music producer who has worked with many emerging and established hip hop artists, including NBA Youngboy, Trippie Redd, Don Toliver, Desiigner, YoungBleu, Yung Pinch, NoCap, and many others. Bassil is a legal owner of the registered copyright in the Original Work as discussed above.

38.    Plaintiff Lasnier, an individual, is a citizen of Denmark. Lasnier created the original compositional elements, along with Plaintiffs Bassil and Leth, that is the basis of this lawsuit and is embodied in the Infringing Work and Infringing Sound Recording in a manner that constitutes willful copyright infringement. Lasnier is a musician and music producer who has worked with many emerging and established hip hop artists, including Tory Lanez, NBA Youngboy, Trippie Redd, Meek Mill, Schoolboy Q, Don Tolier, Lil Durk, Yung Pinch, Famous Dex, Lil Xan, Desiigner, and many others. Lasnier has won many awards, including the MTV Europe Music Award for *Best Danish Act* and Nickelodeon's Kids' Choice Awards for the *Danish Star of the Year*. Lasnier is a legal owner of the registered copyright in the Original Work as discussed above.

39.    As discussed in detail below, Plaintiff Leth, an individual, is a citizen of Denmark. Leth created the Original Work, along with Plaintiffs Bassil and Lasnier, that is the basis of this lawsuit and is embodied in the Infringing Work and Infringing Sound Recording in a manner that constitutes willful copyright infringement. Leth is a musician and music producer who has worked with many emerging and established hip hop artists, including NBA Youngboy, Tory Lanez, Schoolboy Q, Meek Mill, Don Toliver, Trippie Redd, Quando Rondo, Lil Durk, Desiigner, and many others. Leth is a legal owner of the registered copyright in the Original Work as discussed above.

40.    Defendant Webster, an individual, is upon information and belief, a resident of the State of California. Webster is a songwriter, vocalist, and performer of the Infringing Work and Infringing Sound Recording "Highest in the Room." Upon information and belief, he is signed with Defendants Cactus Jack, Grand Hustle, Sony, and Sony/ATV.

41.    Defendant Yildirim, an individual, is upon information and belief, is a citizen of Switzerland. Yildirim is a songwriter and producer of the Infringing

Work and Infringing Sound Recording "Highest in the Room." Upon information and belief, he is signed with Defendant Pulse.

42.   Defendant Frascona, an individual, is upon information and belief, is a citizen of Germany. Frascona is a songwriter and producer of the Infringing Work and Infringing Sound Recording "Highest in the Room."

43.   Defendant Dean, an individual, is upon information and belief, is a resident of the State of California. Dean is a producer, mixer, and mastered the Infringing Work and Infringing Sound Recording "Highest in the Room." Upon information and belief, Dean's alter ego and publishing company is Defendant Papa George.

44.   Defendant Lepr, an individual, is upon information and belief, is a resident of the State of California. Lepr is a producer and engineer of the Infringing Work and Infringing Sound Recording "Highest in the Room."

45.   Defendant Solymar, an individual, is upon information and belief, is a resident of the State of California. Solymar is an engineer of the Infringing Work and Infringing Sound Recording "Highest in the Room."

46.   Defendant Cactus Jack is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business at 823 Congress Avenue, Suite P4, Austin, Texas, 78701. Upon information and belief, Cactus Jack is authorized to operate within the State of California via Cactus Jack Autos, LLC, which maintains an office at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California, 90069. Upon information and belief, Cactus Jack has generated substantial revenue from its authorization to unlawfully exploit, and direct exploitation of, the Infringing Sound Recording.

47.   Defendant Grand Hustle is a limited liability company organized and existing under the laws of the State of Georgia with its principal place of business at 545 Fifth Avenue, Suite 1100 FFO, New York, New York, 10017. Upon information and belief, Grand Hustle has generated substantial revenue

from its authorization to unlawfully exploit, and direct exploitation of, the Infringing Sound Recording.

48.    Defendant Sony is a corporation organized and existing under the laws of the State of Delaware with its principal place of business 25 Madison Avenue, New York, New York, 10010. Upon information and belief, Sony maintains an office located at 10202 Washington Boulevard, Culver City, California, 90232. Sony is a copyright claimant of the United States Copyright Registration for the infringing Sound Recording bearing registration number SR0000858760. Upon information and belief, Sony has generated substantial revenue from its authorization to unlawfully exploit, and direct exploitation of, the Infringing Sound Recording.

49.    Defendant Sony/ATV is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 25 Madison Avenue, New York, New York, 10010. Upon information and belief, Sony/ATV maintains an office at 10202 Washington Boulevard, Culver City, California, 90232. Sony/ATV is a copyright claimant of the United States Copyright Registration for the infringing musical composition "Highest in the Room" bearing registration number PA0002222799. Upon information and belief, Sony/ATV has generated substantial revenue from its authorization to unlawfully exploit, and direct exploitation of, the Infringing Work.

50.    Upon information and belief, Defendant Papa George is the alter ego of Defendant Dean through which Dean receives publishing income. Upon information and belief, Defendant Papa George (through Defendant Dean) is located in the State of California and within this Judicial District. Papa George is a copyright claimant of the United States Copyright Registration for the infringing musical composition "Highest in the Room" bearing registration number PA0002222799. Upon information and belief, Defendant Papa George

has generated substantial revenue from its authorization to unlawfully exploit, and direct exploitation of, the Infringing Work.

51.     Upon information and belief, Defendant Pulse is a limited liability company organized and existing under the laws of the State of California with its principal place of business located at 2840 Rowena Avenue, Los Angeles, California, 90039. Pulse is a copyright claimant of the United States Copyright Registration for the infringing musical composition "Highest in the Room" bearing registration number PA0002222799. Upon information and belief, Pulse has generated substantial revenue from its authorization to unlawfully exploit, and direct exploitation of, the Infringing Work.

52.     The true names and capacities, whether individual, corporate, associate or otherwise, of other Defendants sued herein as Does 1-50, inclusive, are unknown to Plaintiffs at the present time, and Plaintiffs therefore sue such Doe Defendants, and each of them, by such fictitious names. If necessary, Plaintiffs will seek leave of court to amend this Complaint to allege the true names and capacities of each Doe Defendant when such are ascertained.

53.     Plaintiffs are informed and believe and, on that basis, allege that each of Does 1-50, inclusive, participated in the activities described herein and rendered material assistance to the Defendants in the actions and statements herein alleged or, in the alternative, were through their or any of their acts or omissions a proximate cause of and/or substantial factor in the loss and damage suffered or sustained by Plaintiffs as herein alleged. Plaintiffs are further informed and believe, and on that basis allege, that certain Defendants aided and abetted one or more of the other Defendants or otherwise were a proximate cause or substantial factor in the loss or damage suffered and sustained by Plaintiffs as herein alleged, in additional ways which are unknown to Plaintiffs at this time.

54.     Plaintiffs are informed and believe, and on that basis allege, that at all relevant times each of the Defendants was the "alter ego," principal or agent,

partner, independent contractor, servant and/or employee or aider and abettor of at least one other of the Defendants, and all of acts performed by them or omissions alleged herein were made in the scope and course of their engagement, employment, agency, partnership or other such relationship, and with the knowledge, consent, approval and/or ratification of the principals, and each of them.

## STATEMENT OF FACTS

### I. Background of the Original Work

55.    Plaintiffs are musicians and music producers whose production credits include emerging and superstar hip hop artists: Tory Lanez, NBA Youngboy, Trippie Redd, Meek Mill, Young M.A., Schoolboy Q, Don Toliver, Lil Durk, Yung Pinch, Famous Dex, Lil Xan, Desiigner, and many others.

56.    On or about January 15, 2019, Plaintiff Bassil wrote and recorded the guitar parts of the Original Work on Skype with Plaintiffs Lasnier and Leth.

57.    On or about January 19, 2019, Plaintiff Lasnier finalized the Original Work.

### II. Promotion of the Original Work

58.    On or about January 19, 2019, Plaintiff Lasnier posted a link to download the Original Work containing the original guitar melody in a public Discord group (an online discussion group for music producers). Other producers in the group who listened to and discussed the Original Work include Jacari, Baby Winsch, JAG, BeatsBySim, and SLWJMZ.

59.    On or about January 25, 2019, Plaintiff Lasnier sent Plaintiffs Bassil and Leth a sound recording of the Original Work, containing the guitar melody discussed above.

60.    On or about January 25, 2019, Plaintiff Lasnier sent the Original Work to the hip hop artist Desiigner via e-mail, with whom Plaintiffs have worked.

61.     As is customary in the music industry for bourgeoning producers, and as they had done countless times before, Plaintiffs then began e-mailing producers and hip-hop artists the Original Work to preview in the hope that they would like what they heard and license it with the anticipation of future collaborations.

62.     Between January 19, 2019, and May 22, 2019, Plaintiffs e-mailed a collection of their music which included the Original Work (the "Melody Pack") to at least one hundred (100) different music producers and/or hip-hop artists, including but not limited to, Tyga, MurdaGanggeno, Cdot Honcho, Don Q, Ace Hood, Boe Sosa, Daboii, Sage the Gemini, Yalla Beezy, Derez Deshon, Comindine, Ykosiris, Sauve, Global Dan, Paperlovee, and Jesus Honcho.

63.     On or about December 2018 Plaintiff Lasnier and Defendant Lepr connected with one another via Instagram's Direct Messaging feature. Plaintiff Lasnier and Defendant Lepr began following one another's accounts at this time. Plaintiff Lasnier has a very large social media following, including the verified Instagram account @benjaminlasnier, which has more than 766,000 followers, including @cash_passion (Defendant Lepr).

64.     On or about December 14, 2018, Plaintiff Lasnier sent Defendant Lepr a direct message on Instagram asking whether Defendant Lepr would be interested in listening to Plaintiffs' music and collaborating. Defendant Lepr replied on or about December 18, 2018, stating "Of course bro send on thru" and provided his personal email address.

65.     On or about January 22, 2019, Plaintiff Lasnier posted a full video featuring the full sound recording of the Original Work publicly to his more than 767,000 followers via Instagram stories.

66.     On or about January 27, 2019, Plaintiff Lasnier posted the Original Work to his Instagram stories a second time.

67.    On or about February 8, 2019, Plaintiff Lasnier posted the Original Work to his Instagram stories for a third time.

68.    The three videos featuring the Original Work are saved to Plaintiff Lasnier's account and publicly visible to anyone who clicks on or follows his Instagram account. On information and belief, the three videos featuring the Original Work have been viewed well over a hundred thousand times.

69.    Meanwhile, Plaintiff Lasnier and Defendant Lepr continued to message one another privately via Instagram direct messages regarding Plaintiffs' work.

70.    On or about March 13, 2019, anticipating that he would like Plaintiffs' music and compensate them for their works, Plaintiff Lasnier sent Defendant Lepr a message stating "Just dropped [you] 12 new melodies on mail." Defendant Lepr responded, confirming that he had received Plaintiffs' work and that he was using their beats by stating: "Thank you bro. I haven't been getting back to [you] but just know I'm making some moves with your shit."



71.     On or about March 16, 2019, Plaintiff Lasnier followed up with Defendant Lepr via Instagram direct message regarding his beats, "[You] worked on any of the melodies bro? Send the beats back! Imma try to get em placed. Trippie Red and NBA [Youngboy] are asking for beats." Defendant Lepr replied later that day with "Yeah got [you] when I get a chance bro." Defendant Lepr followed up three days later, on or about March 19, 2019, saying "Just sent a couple bro." Indeed, Defendant Lepr emailed Plaintiff two of Plaintiffs' works entitled "Distort" and "Mercy" in which Lepr added musical elements.

72.     On or about April 8, 2019, Plaintiff Lasnier e-mailed Lepr twelve (12) more melody loops. Plaintiff Lasnier then messaged Defendant Lepr via Instagram direct message with "[J]ust dropped you 12 original samples/melodies on mail." Defendant Lepr replied on or about April 10. 2019, with "Got them!"

73.     On or about April 14, 2019, Plaintiff Lasnier e-mailed Defendant Lepr twelve (12) more beats hoping that he would license them. Plaintiff Lasnier then messaged Defendant Lepr via Instagram direct message with "[J]ust dropped you 12 original samples/melodies on mail." Defendant Lepr replied on or about April 19. 2019, with "Yessir they fire."

74.     Finally, on or about, April 22, 2019, Plaintiff Lasnier e-mailed Defendant Lepr twelve (12) more melody loops with the anticipation that Plaintiffs would be credited and compensated for their works. Plaintiff Lasnier then messaged Defendant Lepr via Instagram direct message with "[J]ust dropped you 12 melodies on mail." Defendant Lepr replied, again confirming receipt and stating that he was using the melodies that Plaintiff Lasnier had sent him, on or about April 23, 2019, with "Fire they fire imma send you back some later this week. Been going [strong]."

75.     On or about May 1, 2019, Plaintiff Lasnier sent Defendant Frascona a message via Instagram direct message asking whether he was interested in listening to Plaintiffs' works and collaborating. Defendant Frascona replied on

or around July 11, 2019, stating "Yo im sorry im Late. If you still [w]anna send some [fire] [s]end to" and provided his email address. Plaintiff Lasnier replied that day saying "Imma send [some]." Defendant Frascona then "liked" the message, confirming that he viewed it. On or about September 18, 2019, Defendant Frascona sent Plaintiff Lasnier his personal email address and requested that Plaintiff Lasnier send him beats via Dropbox. Plaintiff Lasnier sent Plaintiffs' works, including the Original Work, via email and Dropbox.

76.   On or about May 22, 2019, Plaintiff Lasnier sent the Original Work via e-mail to Defendant Yildirim, stating "12 original samples/melodies + zip folder with trackout stems to each melody. Lemme know if you wanna collab[orate] on any of em."

77.   Prior to the Infringing Work and Infringing Sound Recording's commercial release: (1) the Original Work had been e-mailed directly to Defendants Lepr; (2) Plaintiff Lasnier and Defendant Lepr had exchanged numerous Instagram direct messages about Plaintiffs' works, including the Original Work; and (3) the three videos featuring the Original Work which were posted to Plaintiff Lasnier's Instagram account have been viewed, on information and belief, well above a hundred thousand times, including by Defendants.

**III.   <u>Background and Success of "Highest in the Room"</u>**

78.   Defendants are the performers, writers, producers, publishers, copyright owners, and administrators of the Infringing Work and/or Infringing Sound Recording.

79.   On or about April 22, 2019, at Defendants' direction and/or with Defendants' permission, a version of the Infringing Work containing the Original Work was first used in Instagram and Twitter video advertisement for Kylie Cosmetics, Defendant Webster's girlfriend Kylie Jenner's company. Kylie Jenner's Instagram account has more than 180 million followers, while her

Twitter following exceeds 34.2 million followers. The video advertisement has been viewed more than 16 million times on Instagram and 7.7 million times on Twitter.

80.    On or about September 30, 2019, Defendants posted or caused to be posted three album art covers for "Highest in the Room" to Defendant Webster's social media accounts, as well as a pre-order link to purchase "Highest in the Room" with the caption "See u on the 4th."

81.    The single "Highest in the Room" was commercially released on October 4, 2019, by Defendants Cactus Jack, Grand Hustle, and Epic Records, a subsidiary of Defendant Sony. "Highest in the Room" was released in a variety of formats, including on 7-inch vinyl, cassette, CD, and digital streaming and download.

82.    On or about October 4, 2019, a music video featuring the Infringing Work/Infringing Sound Recording was released by Defendants on YouTube. To date, the video has well above one hundred and eighty-one million (181,000,000) views on YouTube.

83.    The Infringing Work/Infringing Sound Recording immediately went to #1 on the *Billboard* Hot 100 chart.

84.    "Highest in the Room" was certified 2x Platinum on November 13, 2019 by RIAA for selling more than 2,000,000 copies. Upon information and belief, to date, "Highest in the Room" is Defendant Webster's most successful song.

85.    Upon information and belief, Defendants Webster and Dean have performed "Highest in the Room" at the Fair Park Coliseum in Dallas, Texas on May 3, 2019; Rolling Loud in Miami, Florida on May 11, 2019; Hangout Music Fest in Gulf Shores, Alabama on May 17, 2019; at Boston Calling in Boston, Massachusetts on May 26, 2019; at Firefly Music Festival in Dover, Delaware on June 22, 2019; at Mawazine Festival in Rabat, Morocco on June 26, 2019; at

the Lollapalooza Festival in Stockholm, Sweden on June 28, 2019; at Open'er Festival in Gdynia, Poland on July 3, 2019; at Roskilde Festival in Roskilde, Denmark on July 4, 2019; at Wireless Festival in Frankfurt, Germany on July 5, 2019; at Wireless Festival in London, England on July 6, 2019; at Openair Frauenfeld in Frauenfeld, Switzerland on July 12, 2019; at Woo Hah in Hilvarenbeek, Netherlands on July 14, 2019; at the O2 Arena in London, England on July 16, 2019; at Budweiser's Made in America Festival in Philadelphia, Pennsylvania on September 1, 2019; at Lil Weezyana Fest in New Orleans, Louisiana on September 7, 2019; at Music Midtown in Atlanta, Georgia on September 15, 2019; at the Rolling Loud Festival in Queens, New York on October 12, 2019; at Defendant Webster's Astroworld Festival in Houston, Texas on November 9, 2019; and at E11even in Miami, Florida on December 6, 2019, among others.

86.    Upon information and belief, "Highest in the Room" has been licensed to and/or featured in television advertisements including: (1) Beats Audio with NBA basketball star James Harden; (2) in the wildly popular video game Fortnite; (3) Bleacher Report and NBA; and (4) Kylie Cosmetic's "Kybrows" commercial, among others.

87.    On or about December 27, 2019, Defendants commercially released a remix of "Highest in the Room" featuring Defendant Webster alongside Spanish singer Rosalia Vila ("Rosalia") and American rapper Dominique Jones ("Lil Baby") (the "Remix"). The Remix was the first track on the album *JackBoys*, which features Defendant Webster and was released by Defendant Cactus Jack. The Remix charted in the United States, Italy, Spain, and New Zealand. The Remix also infringes upon the Original Work because its qualitative and quantitative similarities are the same as the Infringing Work.

88.    In sum, the Infringing Work, Infringing Sound Recording, and the Remix have been a worldwide phenomenon, generating, upon information and

belief, well in excess of twenty million dollars ($20,000,000) in revenue. Its success is owed in substantial part to the unauthorized inclusion of the Original Work. Defendants are required to disgorge their ill-gotten gains under the United States Copyright Act, as the success of the Infringing Work, Infringing Sound Recording, and the Remix is due primarily to the unauthorized inclusion of the Original Work.

## Access

89.    As set forth above, the Original Work was: (1) e-mailed by Plaintiffs directly to Defendants Lepr; (2) Plaintiff Lasnier and Defendant Lepr had exchanged numerous Instagram direct messages about Plaintiffs' works, including the Original Work; and (3) three videos featuring the Original Work were posted publicly to Plaintiff Lasnier's Instagram account have been viewed, on information and belief, more than one hundred thousand times, including by Defendants.

90.    Defendants are familiar with Plaintiffs and their work as they have exchanged numerous messages and e-mails regarding Plaintiffs' beats, including the Original Work.

91.    Additionally, well before the commercial release of "Highest in the Room," Plaintiffs had collaborated with many of Defendants' colleagues, including Don Toliver, who is Defendant Webster's close friend, tour mate, and is signed to Defendant Webster's record label Defendant Cactus Jack. Indeed, Plaintiffs are the credited writers, alongside Defendant Lepr, of Don Toliver's song "Situations." The song was completed on or about March 4, 2019, and released by Defendant Cactus Jack on June 12, 2019.

92.    Given that Plaintiffs and Defendants are both active in the hip hop community, had collaborated with many of the same artists, had worked together on a song in March of 2019 which was subsequently released by Defendant Cactus Jack, had numerous messages and e-mails about Defendants' use of

Plaintiffs' work, and the fact that the Original Work was posted publicly three times on Instagram (the very forum in which the correspondence was taking place), it is undeniable that, at minimum, Defendant Lepr was familiar with the Original Work prior to and/or during the time that they wrote the Infringing Work. It is also, based on all of the above, inconceivable that the other Defendant writers were not aware of the use of Plaintiffs' Original Work.

93.    To date, Defendant Lepr continues to follow Plaintiffs Lasnier and Leth's Instagram accounts. Additionally, Defendant Yildirium and Plaintiff Lasnier were in communication via Instagram direct message and e-mail regarding Yildirium's possible use of Plaintiff's works, including the Original Work, from on or about May 1, 2019, to May 21, 2019.

94.    As a result, given the above, including numerous documented e-mail and message exchanges, Defendants unquestionably had access to the Original Work, were fully familiar with the Original Work, and participated in the willful copying of it.

## **Substantial Similarity**

95.    Upon the release of the Infringing Work/Infringing Sound Recording, Plaintiffs immediately recognized their own work, "Cartier."

96.    In addition to being apparent to the ordinary listener, a comparison of the musical elements of both the Original Work and the Infringing Work/Infringing Sound Recording reveals the works are substantially similar. Each example below shows that Defendants copied qualitatively and quantitatively important and original portions of the Original Work and placed those copied original portions into qualitatively and quantitatively important portions of the Infringing Work/Infringing Sound Recording.

97.    As evidenced in the following musical transcription,[1] there are at least three compositional similarities between the Original Work and the Infringing Work/Infringing Sound Recording, including but not limited to: (1) arpeggio[2] melody (scale degrees[3] - Original Work: 3-1-5-3-1-5-3-5, 2-5-2-5-2-5; Infringing Work/Infringing Sound Recording: 3-1-5-3-1-5-3-2-3, 2-7-5-2-7-5-1-1-2); (2) chord sequence – minor tonic (i) to minor dominant (v); and (3) a descending melodic line (Scale degrees 3-2) built into the arpeggio melody and appearing in multiple forms throughout both works. Both works have been transposed[4] to the shared key of A minor and rhythmic scale for ease of comparison. Vertical arrows indicate identical scale degrees with coinciding metric positions[5] between the two works.

───────────────────

[1] A transcription is a written representation of the sounds heard in a musical performance.

[2] An "arpeggio" refers to a sequence of melodic pitches derived from a chord, but are played individually and consecutively, instead of simultaneously. For example, a C-major arpeggio contains the pitches of the C-major chord, namely the pitches C-E-G, which are played consecutively, instead of simultaneously as they would be in strumming a chord on guitar.

[3] A scale degree describes the position within a musical scale of a particular tone. In a traditional seven-note C major scale, for example, the first tone, C, is scale degree 1, D is scale degree 2, E is scale degree 3, and so on. If two melodies contain a significant series of the same or similar scale degrees, as well as rhythms, they usually sound alike.

[4] Transposition is a process whereby a musical work is changed from one key to another for the purposes of comparison (or for performance reasons), but all of the musical properties, such as melody, harmony, and structure, remain intact. Transposition is a standard accepted musical analysis method for comparison.

[5] "Metric position" describes the location within a bar of a particular pitch. For example, two pitches with the same metric position would occur on the same beat, such as beat 1, 2, 3, or 4, or subdivision of that beat. Similar metric positioning contributes and adds to the similarity of two melodies.

98.    The protected musical elements of the Original Work are copied throughout the Infringing Work and Infringing Sound Recording. Specifically, of the 14 notes in the Original Work's arpeggio melody transcribed above, at least 11 occur identically in pitch, rhythm, and metric placement in the Infringing Work/Infringing Sound Recording's arpeggio melody transcribed above. These identical features are indicated with arrows and scale degree numerals in the above transcription. The arpeggio melody recurs without variation not less than 24 times in the Infringing Work/Infringing Sound Recording totaling at least one minute and fifteen seconds (1:15) out of the 2 minute and 55 second (2:55) full duration of the Infringing Work/Infringing Sound Recording – in sum, nearly half of the Infringing Work/Infringing Sound Recording is comprised of the Original Work's melody.

99.    In addition to being used throughout the two minute fifty five second (2:55) Infringing Work/Infringing Sound Recording, as discussed above, the protected elements of the Original Work is the essential musical feature of the Infringing Work/Infringing Sound Recording. Specifically, this arpeggio melody in the Infringing Work/Infringing Sound Recording forms the foundation of the instrumental support for the vocal melodies and other musical

elements of the Infringing Work/Infringing Sound Recording. It is the most identifiable musical feature throughout the Infringing Work/Infringing Sound Recording.

100.  There is very strong objective musicological evidence, based on the transcription above, that a significant proportion of melodic expression in the Infringing Work is copied from the Original Work, indicating that the Infringing Work was modeled after and copied original, distinctive, and significant original elements of the Original Work. The qualitatively and quantitatively important substantial similarities in the example above, and between the works as a whole, coupled with undeniable access makes any claim of independent creation of the Infringing Work categorically untenable. The elements copied from the Original Work are also original, as mentioned, as there is no prior art substantially similar to the Original Work. The copying alleged herein constitutes willful copyright infringement.

## **Continued Exploitation**

101.  The overwhelming success of the Infringing Work, Infringing Sound Recording, and the Remix as set forth above has provided Defendants substantial opportunities to tour and perform around the world. The revenue and profits derived from these performances and appearances, among all other revenue and profits, are directly attributable to the success of the Infringing Work, Infringing Sound Recording, and the Remix. Thus, the touring and concert revenue generated by Defendants is causally connected to the Infringing Work, Infringing Sound Recording, and the Remix, such that the touring revenue, concert revenue, licensing and synchronization revenues, and related public performance revenue should be disgorged to Plaintiffs.

102.  Not only have the Infringing Work, Infringing Sound Recording, and the Remix been a huge musical success for Defendants, but they have resulted in touring revenue, artist royalties, licensing revenue, producer royalties,

and songwriting and publishing revenue attributable to the success of the Infringing Work, Infringing Sound Recording, and the Remix. These opportunities would not have been available to Defendants if they had not infringed Plaintiffs' Original Work.

103.  The Infringing Work, Infringing Sound Recording, and the Remix continue to be reproduced, sold, distributed, publicly performed, licensed, and otherwise exploited on compact discs and albums by Defendants, and as digital downloads, ringtones, and mastertones, and in music videos, all without payment to Plaintiffs.

104.  As discussed above, all Defendants are responsible in some manner for the events described herein and are liable to Plaintiffs for damages available under the Copyright Act. Defendants are involved with the creation, release, reproduction, distribution, exploitation, licensing, receipt of revenue, and public performance of the Infringing Work and/or Infringing Sound Recording and/or the Remix, which constitutes, among other things, the improper preparation of a derivative work and direct, vicarious, and contributory infringement. As co-infringers and practical partners, Defendants are jointly and severally liable for all amounts owed, and for the profits enjoyed by the others. Upon information and belief, Defendants have received, or are owed in pipeline money, in total, more than twenty million dollars ($20,000,000) in profits related to the Infringing Work, Infringing Sound Recording, and the Remix. This revenue and profit received by Defendants includes, but is not limited to, artist royalties, producer royalties, revenue from sales and/or licensing of the Infringing Sound Recording, writer and publisher royalties, licensing royalties, synchronization royalties, public performance royalties, touring revenue, and other revenue, among other things, all of which are directly attributable to the Original Work and should be disgorged to Plaintiffs.

105.   Defendants acts have been and continue to be willful, knowing, malicious, and perpetrated without regard to Plaintiffs' rights.

## FIRST CAUSE OF ACTION

### (Copyright Infringement – 17 U.S.C. § 501)

### (Against All Defendants)

106.   Plaintiffs respectfully repeats and incorporates by reference the allegations contained in Paragraphs 1 through 105, as though fully set forth herein.

107.   Plaintiffs are the legal or beneficial owners of the United States copyright in the Original Work, entitled "Cartier" bearing Registration Number SR 001-396-708.

108.   Defendants have directly, vicariously, and/or contributorily infringed and/or induced infringement of Plaintiffs' copyright in violation of 17 U.S.C. § 501.

109.   Defendants had access to the Original Work, as discussed above.

110.   Defendants' acts were performed without Plaintiffs' permission, license, or consent. Defendants' unauthorized reproduction, distribution, public performance, display, and creation of a derivative work, "Highest in the Room" in the Infringing Work, Infringing Sound Recording, and the Remix, infringes Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. §§ 101 *et. seq*.

111.   Defendants' infringement has been and continues to be, willful, intentional, purposeful, and with complete disregard to Plaintiffs' rights.

112.   As a direct and proximate result of Defendants' infringement, Plaintiffs have been irreparably harmed.

113.   "Highest in the Room" and the Remix copy prominent original parts of the Original Work. This copying satisfies both the intrinsic and extrinsic tests to establish copyright infringement. The Infringing Work, Infringing Sound

Recording, and the Remix embody the prominent original parts of the Original Work.

114.  From the date of creation of "Highest in the Room," all Defendants have infringed Plaintiffs' copyright interest in the Original Work including:

a.  by substantially copying and publicly performing, or authorizing the copying and public performance, including publicly performing "Highest in the Room" at radio, live concerts, personal appearances, and on video, television, and otherwise;

b.  by substantially copying the related marketing and promotion of the sale of the videos, tickets to concerts and other performances, and other merchandise; and

c.  by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of the Original Work in and as part of "Highest in the Room" and the Infringing Sound Recording and the Remix, packaged in a variety of configurations and digital downloads, mixes, and versions, and performed in a variety of ways including radio, concerts, personal appearances, video, television, and otherwise.

115.  Plaintiffs have received no copyright ownership interests in, and for any of the exploitations of, "Highest in the Room" or any of the works associated with the Original Work.

116.  Defendants have and continue to reproduce, distribute, and manufacture large numbers of the Infringing Work, the Infringing Sound Recording, and the Remix, which violate Plaintiffs' copyrights that are at issue in this lawsuit. Defendants have not only marketed and exploited the works that are at issue but have granted or caused to be granted to various parties, licenses to produce, sample, and/or distribute the work that is in violation of Plaintiffs' copyright.

117.   Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants should be found to be vicariously liable.

118.   Defendants, with knowledge of the infringement, materially contributed to the direct infringement alleged herein such that they may be found contributorily liable.

119.   The infringement is continuing as the Infringing Work, the Infringing Sound Recording, and the Remix continue to be licensed for sale, downloads, ringtones, mastertones, and other exploitations by Defendants, and/or their agents.

120.   As a direct and proximate result of Defendants' infringement, pursuant to 17 U.S.C. § 504(a)(1) and (b), Plaintiffs are entitled to actual damages in addition to Defendants' profits both domestically and relating to foreign sales of other exploitation of "Highest in the Room," the Infringing Sound Recording, and the Remix, which were manufactured, distributed, or otherwise infringed domestically. Further, Plaintiffs are entitled to a running royalty on all future exploitations of "Highest in the Room," the Infringing Sound Recording, and the Remix following judgment in an amount to be determined.

121.   Defendants' conduct has caused, is continuing to cause, and will further cause great damage to Plaintiffs, which damages cannot be accurately measured in monetary terms, and therefore, unless enjoined by the Court, Plaintiffs will suffer irreparable injury, for which Plaintiffs are without adequate remedy at law. Accordingly, Plaintiffs are entitled to a permanent injunction pursuant to 17 U.S.C. § 502 following judgment, prohibiting further infringement, reproduction, distribution, sale, public performance, other use, or exploitation of Plaintiffs' copyright.

//

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment and relief, as follows:

1.      For judgment in favor of Plaintiffs and against Defendants;

2.      For a declaration and finding that Defendants have willfully infringed Plaintiffs' copyrighted work in violation of the Copyright Act;

3.      For a declaration and finding that Defendants are directly, vicariously, and/or contributorily liable for copyright infringement, as applicable;

4.      For actual damages and profits of the Defendants for copyright infringement pursuant to 17 U.S.C. § 504(a)(1) and (b), including a finding that Defendants are jointly and severally liable for actual damages, as well as for each other's profits as practical partners;

5.      For an accounting of all profits, income, receipts, or other benefits derived by Defendants from the reproduction, copying, display, promotion, distribution, or sale of products and services or other media, either now known or hereafter devised, that improperly or unlawfully infringe Plaintiffs' copyright pursuant to 17 U.S.C. § 504(a)(1) and (b);

6.      For cost of suit herein;

7.      For pre-judgment and post-judgment interest;

8.      For a running royalty and/or ownership share in the Infringing Work, Infringing Sound Recording, and the Remix following judgment in an amount to be proven at trial, or in the alternative, for the entry of an injunction requiring Defendants, their officers, agents, servants, employees, representatives, successors, licensees, partners, attorneys, and assigns, and all persons acting in concert or participation with each or any one of them to be permanently enjoined from directly or indirectly infringing, reproducing, displaying, promoting, advertising, distributing, or selling any work that infringes, contributorily

infringes, or vicariously infringes Plaintiffs' rights in the work protected by the Copyright Act; and

9.    For such other and further relief as the Court may deem just and proper.


Dated: June 9, 2020                              Respectfully submitted,


                                         By:   /s/ Richard S. Busch
                                         Richard S. Busch (SBN 319881)
                                         Keith Kelly (SBN 323469)
                                         **KING & BALLOW**
                                         1999 Avenue of the Stars, Suite 1100
                                         Los Angeles, CA 90067
                                         Telephone: (424) 253-1255
                                         Facsimile: (888) 688-0482

                                         *Attorneys for Plaintiffs*
                                         OLIVIER BASSIL, BENJAMIN LASNIER, and LUKAS BENJAMIN LETH

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure Rule 38(b), and otherwise, Plaintiffs respectfully demand a jury trial on all issues raised in this Complaint.

Dated: June 9, 2020                     Respectfully submitted,


                                        By:  /s/ Richard S. Busch
                                        Richard S. Busch (SBN 319881)
                                        Keith Kelly (SBN 323469)
                                        **KING & BALLOW**
                                        1999 Avenue of the Stars, Suite 1100
                                        Los Angeles, CA 90067
                                        Telephone: (424) 253-1255
                                        Facsimile: (888) 688-0482

                                        *Attorneys for Plaintiffs*
                                        OLIVIER BASSIL, BENJAMIN LASNIER,
                                        and LUKAS BENJAMIN LETH